IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01354-PAB

JEFFREY J. MONDRAGON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

# ORDER

This matter is before the Court on plaintiff Jeffrey J. Mondragon's complaint [Docket No. 1], filed on May 24, 2013. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On July 13, 2010, plaintiff applied for disability benefits under Title XVI of the Act. R. at 15. Plaintiff alleged that he had been disabled since December 15, 2009. *Id*. After an initial administrative denial of his claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on September 28, 2011. *Id*. On December 8,

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

2011, the ALJ issued a decision denying plaintiff's claim. *Id*. at 23.

The ALJ found that plaintiff had the severe impairments of "sciatica/lumbago." R. at 17. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 18, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. § 416.967(b) except only unskilled work, with occasional climbing, crouching, crawling, stooping, kneeling, and co-worker interaction, avoiding unprotected heights, moving machinery, and commercial driving, and no public interaction." R. at 18. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. at 22.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.

1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) substituting her own opinion of the medical data for the opinion of plaintiff's treating physician; (2) failing to explain the

weight accorded to the reviewing physician's opinion; and (3) failing to specify plaintiff's functional abilities in setting forth her RFC determination. Docket No. 15. Defendant responds that the ALJ was permitted to consider all of the information in the record and that the RFC findings need not correspond directly to a medical opinion. Docket No. 16.

The relevant evidence of record is as follows. On January 30, 2009, an emergency room physician at a hospital in Las Vegas, Nevada diagnosed plaintiff with acute sciatica and moderate degenerative joint disease. R. at 226. A radiology report from that day states that plaintiff has "small anterior hypertrophic spurs at L4 and L5" and "[m]ild degenerative changes," but that the "[l]umbar vertebral heights and disk spaces appear intact" and the "visualized portions of the S-1 joints are normal." Id. at 224.

On June 21, 2010, an emergency room physician at a hospital in Leadville, Colorado diagnosed plaintiff with chronic lumbar pain. R. at 234. The physician found that plaintiff was "able to go into a standing position" and had "[m]ild palpable discomfort over the bilateral low paralumbar region." Id.

On June 26, 2010, plaintiff saw Dr. David Schaut for "severe back pain." R. at 220. Dr. Schaut found that plaintiff had a "very antalgic gait"[2] and diagnosed him with sciatica and lumbago. Id.

On June 28, 2010, plaintiff saw Dr. Wayne L. Callen for complaints of "back pain

---

[2]An "antalgic gait" is a "characteristic gait resulting from pain on weightbearing in which the stance phase of gait is shortened on the affected side." Stedmans Medical Dictionary gait (27th ed. 2000).

for about a week ever since he lifted something and felt a popping in his back." R. at 221. Dr. Callen found that "straight leg raising induces pain in the back" and that the "motor function of lower extremities [was] normal." *Id*. He diagnosed plaintiff with low back strain and prescribed heat, rest, and oxycodone. *Id*.

On June 30, 2010, plaintiff went to the emergency room at the University of Colorado Hospital where he was diagnosed with "acute exacerbation of chronic" lower back pain and degenerative disc disease and was prescribed ibuprofen and hydrocodone. *Id*. at 202. Plaintiff did not report numbness or incontinence and was not found to have any motor weakness; he stated that the pain was radiating into his legs. *Id*. at 203.

Plaintiff saw Dr. Callen again on July 5, 2010 for back pain and pain in his leg. R. at 221. On July 13, 2010, plaintiff saw Dr. Callen because he was "still having back pain." *Id*. at 222.

Early in July 2010, Dr. Callen completed a Residual Functional Capacity questionnaire on behalf of plaintiff, stating that plaintiff has sciatica and slight leg weakness, cannot engage in any lifting, and has trouble walking. R. at 216, 222. Dr. Callen opined that plaintiff should see a back specialist and obtain magnetic resonance imaging. *Id*. at 217. With respect to plaintiff's functional capabilities, Dr. Callen opined that plaintiff could stand continuously for twenty minutes; sit continuously for twenty minutes; alternatively sit or stand for one hour; lift or carry up to ten pounds; and travel alone on public transportation. *Id*. at 217-18. He also opined that plaintiff has problems bending, squatting, and kneeling and has to lie down during the day. *Id*.

On July 29, 2011, Dr. Callen completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on behalf of plaintiff, in which he opined that plaintiff could occasionally lift up to ten pounds; sit or stand for ten minutes at a time and walk for fifteen minutes at a time; sit, stand, or walk for one hour total in an eight-hour workday; carry small objects while using a cane; shop, use public transportation, prepare simple meals, and care for his personal hygiene alone; and requires a cane to walk for more than one block.  R. at 247-52.

On August 24, 2010, plaintiff saw Dr. Callen because his back pain had "flared up" and he was "hurting all over," with pain radiating into his thighs.  R. at 219.  Dr. Callen found that plaintiff's motor function in his lower extremities was normal and that an x-ray of his lumbar spine was normal.  *Id*.

On August 24, 2010, imaging of plaintiff's lumbar spine indicated "5 non-rib bearing lumbar type vertebral bodies.  The vertebral body heights are maintained without compression fracture.  There is mild loss of disk height at L4-L5 and mild anterior osteophytes at L3-L4, L4-L5, and L5-S1.  The lumbar spine demonstrate[s] normal alignment.  The bones demonstrate normal demineralization."  R. at 263.  Based on this imaging, Dr. Vincent Herlihy concluded that plaintiff had mild degenerative disease at L3-L4, L4-L5, and L5-S1.  R. at 225.

On November 10, 2010, state agency reviewing physician Alan Ketelhohn completed a Disability Determination Explanation for plaintiff, in which he opined that Dr. Callen's assessment of plaintiff's functional capacity was "inconsistent with unaided gait, mod[erate] back [range of motion] and -neuro" and thus deserved no weight.  R. at 73.  Dr. Ketelhohn opined that plaintiff could occasionally lift or carry up to twenty

pounds; frequently lift or carry up to ten pounds; stand, walk, or sit for a total of six hours in an eight-hour workday; and push and pull with no limitations. *Id*. at 73-74. Dr. Ketelhohn found that plaintiff had the RFC to perform light work. *Id*. at 75.

On November 15, 2010, imaging of plaintiff's lumbar spine indicated:

Mild mid lumbar levoconvex spinal curvature possibly related to spasm as this was not present on the previous lumbar x-rays. No fracture or anteroposterior alignment abnormality. At least mild facet arthritic change bilaterally at L5-S1. Mild to moderate disk space narrowing L4-5, unchanged with preservation of disk space heigh at all other lumbar levels.

Impression: No fracture. Mild mid lumbar levoconvex curvature. L5-S1 facet arthritic change and L4-5 disk degenerative change not significantly changed compared to August 24, 2010.

*Id*. at 264.

The record contains treatment notes from Dr. Callen for plaintiff's back pain and other medical complaints through September 10, 2011. R. at 265-73.

The ALJ accorded little weight to Dr. Callen's opinion, explaining that:

[T]he objective medical evidence of record fails to support it. Indeed, the findings of x-ray imaging of the claimant's lumbar spine consistently showed only mild degenerative disc disease or arthritic changes. Moreover, findings of a June 21, 2010 physical examination indicated the claimant had only mild distress and pain to palpitation [sic], with intact sensation. . . . Despite the claimant's complaints of low back pain radiating into the lower extremities, physical examinations of the claimant repeatedly showed normal motor function in the lower extremities, with normal strength and reflexes. . . .

Dr. Callen's July 2011 opinion contains inconsistencies, which renders his opinion less persuasive. Indeed, while Dr. Callen's opinion states the claimant cannot walk at a reasonable pace, he opined that the claimant can shop, travel, walk without a wheelchair or crutches, use public transportation, and climb [at] a reasonable pace. . . .

In sum, the above residual functional capacity assessment is supported by the objective medical evidence of record, the claimant's less than credible allegations of disability, his medication regimen, the fact that the claimant engaged in work activity subsequent to the alleged onset date, and the fact

> that the objective medical evidence of record fails to support the claimant's allegations of very limited activities-of-daily-living capabilities.

R. at 20-21 (internal citations omitted).  The ALJ did not discuss Dr. Ketelhohn's opinion.

### *1.  Weighing Dr. Ketelhohn's Opinion*

Plaintiff argues that the ALJ failed to properly assess Dr. Ketelhohn's opinion in relation to Dr. Callen's opinion.  Docket No. 17 at 8.

The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship.  20 C.F.R. § 404.1527(c)(2).  Thus, an ALJ must accord controlling weight to the opinion of a treating physician where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  *Id.*  Moreover, the opinion of a treating physician merits some measure of deference to be determined based on an application of the factors listed in 20 C.F.R. § 404.1527(c)(2), even if it is not entitled to controlling weight.  20 C.F.R. § 404.1527(c)(2)(i)-(ii).  "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

As "findings of a nontreating physician based upon limited contact and examination are of suspect reliability," *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), when such findings conflict with the opinions of a treating physician, the ALJ must examine the nontreating physician's report "to see if it outweighs the treating

physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 n.13 (10th Cir. 2004) (internal citations omitted). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 404.1527(e)(2)(ii).

In *Hamlin v. Barnhart*, the ALJ's failure to discuss the opinion of a consultative physician in his decision led the court to conclude that the ALJ had not relied on that physician's opinion in arriving at his determination. *See* 365 F.3d at 1219 n.13. The court further explained that the ALJ could not rely on this opinion–which conflicted with the opinion of a treating physician–without explaining why it outweighed the treating physician's opinion. *Id*.

Here, the ALJ did not afford Dr. Callen's opinion controlling weight, R. at 20-21, but did not "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." *See* 20 C.F.R. § 404.1527(e)(2)(ii). It may be reasonable to infer that the ALJ relied in some measure on Dr. Ketelhohn's opinion, as the RFC was consistent with this opinion. *Compare* R. at 18 *with* R. at 73-74. Indeed, defendant argues that, "[a]lthough the ALJ did not state the weight given to Dr. Ketelhouhn's [sic] opinion, the ALJ's apparent oversight does not warrant remand, because it is clear from the face of the ALJ's decision that the ALJ assigned weight to his opinion." Docket No. 16 at 19. The problem, however, is not just that the ALJ failed to state what weight she assigned Dr. Ketelhohn's opinion, but rather that she did not explain why she apparently weighted it more favorably than Dr. Callen's opinion. *See*

*Hamlin*, 365 F.3d at 1219.  Absent such an explanation, the Court cannot determine whether or not the ALJ's determination was based on substantial evidence.

Defendant cites *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012), for the proposition that "[a]ny error in failing to specify the weight given to" a medical opinion is harmless where the "specific limitations" identified by the physician are not "inconsistent with the limitations the ALJ" identifies in the RFC.  Docket No. 16 at 19. This case is inapposite because it did not necessitate that the ALJ resolve a conflict between a consultative physician's and a treating physician's opinions.  *See Keyes-Zachary*, 695 F.3d at 1161-62 (plaintiff "does not identify any inconsistencies either among these medical opinions or between the opinions and the ALJ's RFC").  Indeed, applying *Keyes-Zachary* as defendant asks the Court to apply it would contradict *Hamlin* by excusing an ALJ from explaining the weight afforded to a non-treating physician's opinion so long as the RFC determination was consistent with that opinion, even if the opinion conflicted with that of a treating physician.

The failure to follow 20 C.F.R. § 404.1527(e)(2)(ii) is grounds for remand.  *See Garcia v. Barnhart*, 188 F. App'x 760, 766 ("Given the ALJ's failure to . . . adequately justify his rejection of the treating physician's opinion (under which the claimant would clearly be disabled), the decision denying benefits must be reversed."); *Dahl v. Colvin*, Case No. 12-cv-01552-PAB, 2014 WL 983514, at *7 (D. Colo. Mar. 12, 2014) ("As the Court cannot determine whether the ALJ applied the correct legal standard and relied on substantial evidence in giving greater weight to the state agency physician's opinion than to Dr. Solomon's opinions, remand is warranted.").

### *2. Interpreting Medical Evidence*

Plaintiff argues that the ALJ improperly substituted her own medical judgment for that of the medical experts. Docket No. 15 at 26-29. The Court will address this argument as it may be relevant on remand.

The parties identify a tension at the heart of the ALJ's role. On the one hand, an ALJ, who is presumptively not a medical expert, "is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). An "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity" to work. SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996). Accordingly, the Tenth Circuit has rejected the argument that "there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*; 379 F.3d at 949; *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"). Moreover, "in reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on *all* of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (emphasis in original); *see also Corber v. Massanari*, 20 F. App'x 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all of the evidence in the record, not

only the relevant medical evidence, it is well within the province of the ALJ.").

On the other hand, courts frequently reiterate the rule that an ALJ may not substitute her medical judgment for that of a physician. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) ("the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the result of the [Minnesota Multi-Phasic Personality Inventory-2] test were not an adequate basis on which to make a diagnosis."). In keeping with this rule, courts have held that an ALJ errs by attempting to derive functional limitations from "raw" or "bare" medical data, in the absence of a physician's conclusion about how a claimant's physical condition impacts her ability to engage in various activities. *See Bowman v. Astrue*, 511 F.3d 1270, 1276 (10th Cir. 2008) ("Unfortunately, Dr. Metcalf did not provide a medical opinion concerning Ms. Bowman's ability to stand or sit in a workplace setting, and it is pure guesswork to extrapolate one from the various findings that are set forth in his report.").

Reconciling these demands is difficult in the abstract. Instead, courts must assess on a case-by-case basis the substantive link between the evidence and the RFC determination. Thus, in *McDonald v. Astrue*, 492 F. App'x 875, 886 (10th Cir. 2012), the court found that the ALJ's RFC determination was supported by substantial evidence where the ALJ took into account the claimant's "efforts to obtain work . . .; her clinicians' endorsement of her work/educational efforts; the fact that her reasons for not working . . . were largely unrelated to her mental status; her engagement in a wide range of daily activities, . . .; the relatively unremarkable medical findings; and the evidence that her treatment was effective." Likewise, in *Rutledge v. Apfel*, 230 F.3d

1172, 1175 (10th Cir. 2000), the court found that the ALJ did not err in taking into account the result of a pulmonary test because "the report of the test results included a computer interpretation that claimant had a moderate obstructive lung defect," which was "consistent with the opinion" of a physician. By contrast, the court in *Adkins v. Barnhart*, 80 F. App'x 44, 47 (10th Cir. 2003), found that there was no evidence to support the ALJ's RFC determination where the record lacked an opinion from a physician regarding the functional limitations imposed by the claimant's pain.

In this case, the link between the ALJ's RFC determination and certain cited portions of plaintiff's medical records is attenuated. Specifically, the ALJ relied on the findings that plaintiff had "only mild degenerative disc disease or arthritic changes," "was able to go to a standing position," and "showed normal motor function in the lower extremities, with normal strength and reflexes," but did not explain how these findings correlate to functional capabilities such standing or sitting for prolonged periods of time or carrying certain quantities of weight. *See* R. at 21. The Court, like the ALJ, lacks the medical expertise to correlate these medical findings to an RFC and thus cannot determine whether they constitute substantial evidence. This uncertainty is compounded by the fact that the ALJ did not make specific findings regarding many of plaintiff's functional limitations. *See* R. at 18-21; SSR 96-8P, 1996 WL 374184, at *1 (the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis"). While the Court need not determine whether these issues on their own would justify reversal, the ALJ should address them on remand to the extent applicable.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED March 27, 2015.

                                     BY THE COURT:

                                     s/Philip A. Brimmer
                                     PHILIP A. BRIMMER
                                     United States District Judge